# NO. 12-21-00045-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE 392ND* |
| *C.D., J.D. AND T.D.,* | § | *JUDICIAL DISTRICT COURT* |
| *CHILDREN* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

M.S. appeals the termination of her parental rights. In three issues, she argues that the evidence is legally and factually insufficient to show that she voluntarily and knowingly executed an unrevoked or irrevocable affidavit of relinquishment of parental rights, that the trial court abused its discretion by denying her motion for new trial, and that the trial court abused its discretion by denying her motion to dismiss. We affirm.

## BACKGROUND

J.S.D.[1] is the father and M.S. is the mother of C.D., J.D., and T.D. On May 8, 2017, the Department of Family and Protective Services (the Department) filed an original petition for protection of C.D., J.D., and T.D., for conservatorship, and for termination of J.S.D.'s and M.S.'s parental rights. After an adversary hearing, the Department was appointed temporary managing conservator for the children and the parents were appointed temporary possessory conservators of the children with limited rights and duties. According to the trial court's scheduling order, the one year dismissal date for this case was May 14, 2018, pursuant to Section 263.401 of the Texas Family Code. The dismissal date was continued to November 10, 2018.

---

[1] On March 10, 2021, the trial court found, by clear and convincing evidence, that J.S.D. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsection (K) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.S.D., C.D., J.D., and T.D. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.S.D., C.D., J.D., and T.D. be terminated. The father, J.S.D., is not a party to this appeal.

The trial court ordered the parties to mediation which took place on September 12, 2018, and, as part of the Mediated Settlement Agreement ("MSA"), the parties agreed that an "interim order (in the form of a 'final' order for the purpose of complying with the dismissal date) would be entered appointing the Department as the children's managing conservator." On October 29, the trial court entered a Final Order in Suit Affecting the Parent-Child Relationship, stating that the MSA was attached to the Final Order. In the Final Order, the trial court appointed the Department as permanent managing conservators of the children, and appointed M.S. and J.S.D. as possessory conservators.

On June 6, 2019, the Department filed an original petition to modify the Final Order. The Department stated that the petition was being filed after the date the order denying termination was rendered, and that the circumstances of the children, parent, sole managing conservator, possessory conservator, or other party affected by the Final Order had materially and substantially changed since the date that the Final Order was rendered. The Department alleged that M.S. committed one or more acts or omissions necessary to support termination of her parental rights under subsections (D), (E), (K), (O), and (P) of Section 161.001(b)(1) of the Texas Family Code before the date the order denying termination was rendered.

During a hearing on August 4, 2020, M.S. signed an affidavit of voluntary relinquishment of parental rights to the Department regarding C.D., J.D., and T.D. On March 10, 2021, the trial court entered an Order of Termination, finding, by clear and convincing evidence, that M.S. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsection (K) (executing an unrevoked or irrevocable affidavit of relinquishment of parental rights) of Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between M.S., C.D., J.D., and T.D. is in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between M.S., C.D., J.D., and T.D. be terminated.

M.S. filed a motion for new trial on March 26, stating that her relinquishment of parental rights was not made freely and knowingly. She also filed a motion to dismiss for lack of jurisdiction on April 28. The trial court denied both motions and this appeal followed.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights.

***Vela v. Marywood***, 17 S.W.3d 750, 759 (Tex. App.–Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); ***In re J.J.***, 911 S.W.2d 437, 439 (Tex. App.–Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. ***Wiley v. Spratlan***, 543 S.W.2d 349, 352 (Tex. 1976); ***In re Shaw***, 966 S.W.2d 174, 179 (Tex. App.–El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2020); ***In re J.M.T.***, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2020); ***Green v. Tex. Dep't of Protective & Regulatory Servs.***, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); ***In re J.M.T.***, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West Supp. 2020); ***In re J.M.T.***, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***Wiley***, 543 S.W.2d at 351; ***In re J.M.T.***, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019). The burden of proof is upon the party seeking the deprivation of parental rights. ***In re J.M.T.***, 39 S.W.3d at 240.

**STANDARD OF REVIEW:**
**TERMINATION OF PARENTAL RIGHTS AND MOTION FOR NEW TRIAL**

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.–Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. ***In re J.F.C.***, 96 S.W.3d 256, 266 (Tex. 2002).

We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id*.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id*. at 27-29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.–Houston [1st Dist.] 1997, pet. denied).

In a parental termination case, an appellate court reviews a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). "Under an abuse of discretion standard, the appellate court defers to the trial court's factual determinations if they are supported by evidence, but reviews the trial court's legal determinations de novo." *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). The trial court is the factfinder and accordingly is the sole judge of the witnesses' credibility. *Hanners v. State Bar of Tex.*, 860 S.W.2d 903, 908 (Tex. App.–Dallas 1993, writ dism'd).

## TERMINATION UNDER SECTION 161.001(b)(K) AND MOTION FOR NEW TRIAL

In her first and second issues, M.S. argues the evidence is legally and factually insufficient to show that she voluntarily and knowingly executed an unrevoked or irrevocable affidavit of relinquishment, and that the trial court abused its discretion in denying her motion for new trial based upon her execution of an unrevoked or irrevocable affidavit of relinquishment.

**Applicable Law**

The court may order termination of the parent-child relationship if the court finds by clear

and convincing evidence that the parent has executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights. TEX. FAM. CODE ANN. § 161.001(b)(1)(K) (West Supp. 2020). The petitioner, the Department, has the burden to prove the elements necessary to support termination of the parent-child relationship. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014). Section 161.103 requires that the affidavit be for voluntary relinquishment, and implicit in Section 161.001(b)(1)(K) is the requirement that the affidavit of parental rights be voluntarily executed. *Id.*; TEX. FAM. CODE ANN. §§ 161.001(b)(1)(K); 161.103(a) (West Supp. 2020). Evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with Section 161.103 is prima facie evidence of its validity. *In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.). An involuntarily executed affidavit is a complete defense to a termination suit based on Section 161.001(b)(1)(K). *See In re K.M.L.*, 443 S.W.3d at 113.

Once an affidavit has been shown to comply with the requirements of Section 161.103, the affidavit may be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion. *In re D.E.H.*, 301 S.W.3d 825, 830 (Tex. App.—Fort Worth 2009, pet. denied); *In re N.P.T.*, 169 S.W.3d 677, 679 (Tex. App.—Dallas 2005, pet. denied). The burden of proving such wrongdoing is on the party opposing the affidavit. *In re R.B.*, 225 S.W.3d at 804. Further, a direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit. TEX. FAM. CODE ANN. § 161.211(c) (West 2014). A motion for new trial is a direct attack on a judgment. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012); *In re J.H.*, 486 S.W.3d 190, 195 (Tex. App.—Dallas 2016, no pet.).

Coercion occurs if someone is compelled to perform an act by force or threat. *In re D.E.H.*, 301 S.W.3d at 828-29; *see also B.A.L. v. Edna Gladney Home*, 677 S.W.2d 826, 831 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e) (stating that the "essence of an 'undue influence' claim is overcoming the free will of an individual and substituting the will of another, thereby causing a person to do an act which he would not otherwise have done" and that "'[o]verreaching' is tricking, outwitting, or cheating a person into doing an act which he would not otherwise have done"). Duress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. *In re D.E.H.*, 301 S.W.3d at 829; *but see Methodist Mission Home of Tex. v. N.A.B.*, 451 S.W.2d 539, 543 (Tex. Civ. App.—San Antonio 1970, no writ) (reasoning that

"exerted influence cannot be branded as 'undue' merely because it is persuasive and effective"). Fraud may be committed through active misrepresentation or passive silence, and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage. *In re D.E.H.*, 301 S.W.3d at 829.

Courts have determined in cases involving voluntary affidavits of relinquishment that a parent's feeling pressured, emotionally upset, or under stress when signing the affidavit did not render the affidavit involuntary. *Id.* at 830. In other words, that a parent feels pressured, emotionally upset, and under stress when signing an affidavit of relinquishment does not render the affidavit involuntary or rise to the level of duress or coercion. *In re Z.M.R.*, 562 S.W.3d 783, 793 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Lumbis v. Tex. Dep't of Protective & Regulatory Servs.*, 65 S.W.3d 844, 851 (Tex. App.—Austin 2002, pet. denied); *In re M.B.T.*, No. 10-16-00067-CV, 2016 WL 3896486, at *3 (Tex. App.—Waco July 13, 2016, pet. denied) (mem. op.).

## Analysis

M.S. challenges the voluntariness of her affidavit of relinquishment based on fraud, duress, and coercion. As such, the Department, has the burden to prove the elements necessary to support termination of the parent-child relationship. *See In re K.M.L.*, 443 S.W.3d at 113. The record shows that M.S. was represented by counsel and executed her affidavit of relinquishment during a hearing. M.S.'s affidavit stated, "I freely, voluntarily, and permanently give and relinquish to the Department all my parental rights and duties." At the August 2020 hearing, the Department's former caseworker acknowledged that M.S. signed a voluntary affidavit of relinquishment and the Department accepted the affidavit. The trial court found that the affidavit of relinquishment was in proper form and substance, that it was properly notarized and signed, and that M.S. removed herself from the courtroom after executing the relinquishment. Based on this evidence, we find the affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with the Texas Family Code and is prima facie evidence of its validity. *See In re R.B.*, 225 S.W.3d at 804. Therefore, the affidavit may be set aside only upon proof, by a preponderance of the evidence, that it was executed as a result of fraud, duress, or coercion. *See In re D.E.H.*, 301 S.W.3d at 830; *In re N.P.T.*, 169 S.W.3d at 679. As noted above, M.S. has the burden of proving such wrongdoing. *See In re R.B.*, 225 S.W.3d at 804.

At the hearing on the motion for new trial, M.S. testified that she did not believe that she signed the relinquishment freely, knowingly, and without coercion or pressure. She said that her

attorney and the attorney ad litem told her that the only way she would "ever possibly see [her] children again" was to sign the affidavit. According to M.S., the attorney ad litem stated that the Department would terminate her parental rights even if she did not sign the affidavit. M.S. stated that she "kept saying 'no,'" did not feel right about signing the affidavit, and did not want to sign the affidavit. However, she acknowledged that when she signed the affidavit, she was under no threat of criminal prosecution, she was represented by an attorney, and she discussed the affidavit with her attorney. At that point, M.S. knowingly, intelligently, and voluntarily waived her attorney-client privilege between herself and the attorney who represented her when she signed the affidavit. Her former attorney testified that to the best of his knowledge, the affidavit was fully and duly executed, and he fully advised M.S. of the implications of signing the affidavit. He also recalled "pretty heated conversations" regarding the affidavit between him and the Department. However, he said, almost all parents do not want to sign an affidavit. M.S.'s former caseworker testified that there was no indication that M.S. signed the affidavit under fraud, duress, or coercion. She said that M.S. appeared to be upset, but she did not appear to be under duress or coercion.

In her brief, M.S. contends that she was pressured by "several individuals" who told her that she had no choice but to sign the affidavit. That pressure, she argues, caused her to sign the affidavit against her free will. The fact that M.S. felt pressured or was emotionally upset and under stress when signing the affidavit of relinquishment does not render the affidavit involuntary. *See In re M.B.T.*, 2016 WL 3896486, at *3; *In re D.E.H.*, 301 S.W.3d at 830 (stating that no evidence parent's execution of affidavit resulted from coercion, duress, or fraud even though parent felt "pressured" and "forced" to sign the relinquishment); *In re R.B.*, 225 S.W.3d at 805-06 (stating that parents acted voluntarily and without duress, fraud, or coercion in executing affidavits even though evidence supported that they were emotionally distressed and had been placed under "considerable pressure"); *In re N.P.T.*, 169 S.W.3d at 679-81 (concluding that father acted voluntarily when he signed affidavit of relinquishment as part of plea bargain agreement, even though evidence showed father was under pressure to make a decision); *see also Lumbis*, 65 S.W.3d at 851 (indicating that fact parent is emotionally upset when signing affidavit of relinquishment does not render affidavit involuntary).

Therefore, we find that the evidence, when viewed in the light most favorable to the finding, was sufficiently clear and convincing so that a reasonable trier of fact could have formed a firm belief or conviction that M.S. executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights. *See* TEX. FAM. CODE ANN.

7

§ 161.001(b)(1)(K); ***In re J.F.C.***, 96 S.W.3d at 266; ***In re C.H.***, 89 S.W.3d at 25. Accordingly, the evidence is legally and factually sufficient to support termination of M.S.'s parental rights under subsection (K) of Section 161.001(b)(1).[2] Moreover, because the record contains no evidence that M.S.'s affidavit of relinquishment resulted from coercion or duress, we find that the trial court did not abuse its discretion in denying M.S.'s motion for new trial. *See **In re R.R.***, 209 S.W.3d at 114.

We also address M.S.'s contention that her affidavit was also involuntary due to undue influence which overcame her free will and caused her to sign the affidavit. As stated above, Section 161.211(c) limits the grounds of attack to fraud, duress, and coercion. *See* TEX. FAM. CODE ANN. § 161.211(c). As a result, M.S. cannot attack the voluntariness of her affidavit based on undue influence. *See id.*; *see also **State Office of Risk Mgmt. v. Martinez***, 539 S.W.3d 266, 270 (Tex. 2017) (appellate court construes statute according to plain language); ***In re Bell***, 91 S.W.3d 784, 790 (Tex. 2002) (words excluded from statute must be presumed to have been excluded for a purpose); ***In re K.L.G.***, No. 04-15-00522-CV, 2015 WL 7562843, at *3 (Tex. App.—San Antonio Nov. 25, 2015, no pet.) (mem. op.) (addressing claim of duress, but not addressing case that discussed undue influence because it predated adoption of Section 161.211(c)'s limitation on the grounds for attacking the voluntariness of an affidavit.).

Moreover, M.S. contends that the MSA, signed September 12, 2018, was the "beginning of the fraud, duress, or coercion inflicted" upon her. According to the MSA, if the children were not placed with a person listed in the MSA after the Department completed an investigation and home studies, then the Department would present evidence of grounds for involuntary termination of M.S.'s parental rights. However, the MSA stated, if M.S. signed an affidavit of relinquishment, the Department would base such termination on the affidavit rather than involuntary grounds. At the hearing on the motion for new trial, M.S. stated that she was threatened with possible criminal prosecution by the Department's attorney, including the accusation that she was aware of the alleged sexual assaults against her children by J.S.D. and her paramour. At the time of the mediation, M.S. stated, these alleged sexual assault charges were pending.[3] M.S. testified she felt threatened and these threats influenced her free will to voluntarily enter into the MSA. Further, in her brief, M.S. contends that she was defrauded

---

[2] M.S. does not challenge the trial court's finding that termination of her parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

[3] At the hearing on the motion for new trial, M.S., the Department's former caseworker, and the Department stated that the indictments against J.S.D. and M.S.'s former paramour were ultimately dismissed.

because the MSA was an "illusory" and unenforceable contract due to the "insubstantial" obligation imposed on the Department.

However, in this case, the Department sought termination on the basis of the affidavit, not the MSA signed almost two years prior. *See **In re K.D.**, 471 S.W.3d 147, 162 (Tex. App.— Texarkana 2015, no pet.). "It matters not whether the [a]ffidavit resulted from a court-ordered mediation and statutorily compliant mediated settlement agreement or whether it resulted from an informal conference of the parties and attorneys in the hallway of the courthouse." *See id.* at 162-63. The primary issue is whether the affidavit itself was procured by fraud. *See id.* at 163. Because we find that the affidavit was not a product of fraud, it does not matter whether the MSA was procured by fraud. *See id.* The MSA merely required M.S. to execute a valid affidavit of relinquishment if certain events occurred or if she did not want the Department to present evidence of grounds for an involuntary termination. *See id.*

Accordingly, for the above reasons, we overrule M.S.'s first and second issue. *See **In re Z.M.R.***, 562 S.W.3d at 793; ***Lumbis***, 65 S.W.3d at 851; ***In re M.B.T.***, 2016 WL 3896486, at *3; ***In re R.R.***, 209 S.W.3d at 114.

### MOTION TO DISMISS

In her third issue, M.S. argues that the trial court abused its discretion in denying her motion to dismiss for lack of jurisdiction pursuant to Section 263.401(b) and (c) of the Texas Family Code.

**Standard of Review**

The denial of a motion to dismiss under the applicable version of Section 263.401 is reviewed for an abuse of discretion. ***In re Dep't of Family & Protective Servs.***, 273 S.W.3d 637, 642-43 (Tex. 2009). A trial court's interpretation of the law is reviewed de novo. *Id.* at 642. A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner or when it acts without reference to any guiding rules or principles. ***In re J.D.D.***, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied) (citing ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 241–42 (Tex. 1985)).

**Applicable Law**

The version of Section 263.401[4] that governs this case states in part:

_____

[4] Section 263.401 was amended effective September 1, 2017. Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, sec. 263.401, 2017 TEX. SESS. LAW SERV. 716, 721 (codified at TEX. FAM. CODE ANN. § 263.401(a) (West Supp. 2020)). The amended version applies only to suits filed on or after the effective date. *Id.* § 33, at 738. This suit was filed in May 2017, before the effective date. Therefore, the dismissal deadline in this case is governed

9

(a)     Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b–1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

. . . .

(c)     If the court grants an extension under Subsection (b) or (b–1) but does not commence the trial on the merits before the dismissal date, the court shall dismiss the suit. The court may not grant an additional extension that extends the suit beyond the required date for dismissal under Subsection (b) or (b–1), as applicable.

Act of May 29, 2015, 84th Leg., R.S., ch. 944, § 38, sec. 263.401, 2015 TEX. SESS. LAW SERV. 3268, 3283 (amended 2017). Section 263.402[5] provides that "[a] party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit." Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017). "A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences." *Id.* The Texas Supreme Court found that subsections (a) and (b) provide time limits for which a trial court may retain the case on its docket, and for which it would clearly have jurisdiction. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 642. "But, although subsection 263.401(a) provides for what is called the 'one-year dismissal date' and subsection 263.401(b) provides for a 180–day extension of that one-year dismissal date (if the trial court finds that certain circumstances exist), nothing in the language of section 263.401 indicates that these deadlines are jurisdictional." *Id.* Further, Section 263.402 provides that a party may waive its right to dismissal if the party "fails to make a timely motion to dismiss the suit or to make a motion requesting the court to render a final order before the deadline for dismissal." *Id.*; Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017). Subject-matter jurisdiction, however, cannot be waived; thus, the Court found, if the Legislature intended for the deadlines to be jurisdictional, it would not have expressly

---

by the 2015 version of the statute. *Id.*

[5] As with Section 263.401, the version of Section 263.402 in effect as of the date of this opinion applies only to suits filed on or after September 1, 2017. Act of May 28, 2017, 85th Leg., R.S., ch. 319, § 12, 2017 TEX. SESS. LAW SERV. 713, 718-19 (codified at TEX. FAM. CODE ANN. § 263.402 (West 2019)).

permitted them to be waived. ***In re Dep't of Family & Protective Servs.***, 273 S.W.3d at 642.

<u>Analysis</u>

M.S. contends that the trial court abused its discretion by denying her motion to dismiss because there has been no "true" final order on the original petition filed by the Department on May 8, 2017, nor commencement of a trial on the merits.

We must first determine whether the trial court's Final Order, was in fact final. The trial court's order did not terminate the parent-child relationship, but appointed the Department as permanent managing conservator of M.S.'s children, and M.S. and J.S.D. as possessory conservators. Whether a judicial decree is a final judgment must be determined from its language and the record in the case. ***Lehmann v. Har-Con Corp.***, 39 S.W.3d 191, 195 (Tex. 2001). When there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. ***Id.*** at 205.

Section 263.404(a) states that a court may render a final order appointing the Department as managing conservator of a child without terminating the rights of the parent if the court finds that

> (1)  appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and
>
> (2)  it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

*See* TEX. FAM. CODE ANN. § 263.404(a) (West 2019). In the Final Order, the trial court appointed the Department as permanent managing conservator of C.D., J.D., and T.D., found that the appointment of a parent as managing conservator would not be in the best interest of the children because the appointment would significantly impair the children's physical health or emotional development, and it would not be in the best interest of the children to appoint a relative of the children or another person as managing conservator. *See id.* The Final Order also appointed M.S. and J.S.D. as possessory conservators, granted possession and access to them, and delineated the rights of the parents and conservators. Although M.S. argues that the Final Order left "numerous substantial issues in the case unresolved," she fails to explain or enumerate those issues. From this evidence, the Final Order filed on October 29, 2018, is a "final order" for purposes of complying with Section 263.401. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 944, § 38, sec. 263.401, 2015 TEX. SESS. LAW SERV. 3268, 3283 (amended 2017); TEX. FAM. CODE ANN. § 263.404(a); ***Lehmann***, 39 S.W.3d at

11

205.

Next, we must determine if the trial court abused its discretion in denying M.S.'s motion to dismiss. As noted above, the deadlines in the version of Section 263.401(a) and (c) applicable to this case are not jurisdictional, that is, the trial court does not lose jurisdiction when the identified time periods lapse. *See F.R. v. Tex. Dep't of Family & Protective Servs.*, No. 03-17-00487-CV, 2017 WL 6503082, at *4 (Tex. App.—Austin Dec. 15, 2017, no pet.) (mem. op.); *In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 642. No change automatically occurs in a case when the deadline passes. *See F.R.*, 2017 WL 6503082, at *4; *but see* TEX. FAM. CODE ANN. § 263.401(c) (West 2019) (providing that if a trial on the merits does not commence "before the dismissal date, the court's jurisdiction over the suit is terminated and the suit is automatically dismissed without court order"). Moreover, a party who fails to make a timely motion to dismiss the suit, before the trial on the merits commences, waives the right to object to the court's failure to dismiss the suit. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017).

Here, the trial court held a hearing on the MSA and the resulting Final Order on September 20, 2018. The testimony reflected that the parties agreed to an MSA, that the Department would be appointed permanent managing conservator of the children, that the parents would be appointed possessory conservators, and that an order reflecting their agreement would be drafted for the trial court. We conclude that the trial on the merits commenced on September 20, 2018. *See In re Z.S.*, No. 14-19-00891-CV, 2020 WL 2037202, at *4-5 (Tex. App.—Houston [14th Dist.] Apr. 28, 2020, no pet.) (op.) (determining when a trial on the merits "commences"). M.S. filed her motion to dismiss on April 28, 2021, approximately two and a half years after the Final Order was filed on October 29, 2018. From this evidence, M.S. did not file a timely motion to dismiss under Section 263.402 and has waived her right to object to the trial court's failure to dismiss the suit. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017).

Even if the Final Order was temporary, as M.S. asserts, it is well-settled that a temporary order is superseded by entry of a final order, rendering moot any complaint about the temporary order. *See In re A.K.*, 487 S.W.3d 679, 683 (Tex. App.–San Antonio 2016, no pet.); *Erlewine v. Erlewine*, No. 03–06–00308–CV, 2007 WL 2462042, at *2 (Tex. App.–Austin Aug. 29, 2007, no pet.) (mem. op.) (concluding temporary order modifying child support was no longer in effect when superseded by final judgment and complaint about modification was moot); *see also*

*Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.–Houston [1st Dist.] 1988, no writ). In other words, after the trial court enters its final order, any complaints about temporary orders become moot. *Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.–Houston [1st Dist.] 2014, no pet.). Because the trial court rendered an Order of Termination, M.S.'s complaints about the Final Order, if considered a temporary order, would be moot and not subject to review on appeal. *See In re A.K.*, 487 S.W.3d at 683; *see also Wright*, 749 S.W.2d at 234; *L.F. v. Dep't of Family & Protective Servs.*, Nos. 01–10–01148–CV, 01–10–01149–CV, 2012 WL 1564547, at *14 (Tex. App.–Houston [1st Dist.] May 3, 2012, pet. denied) (mem. op.) (declining to consider temporary orders authorizing emergency removal after final order of termination entered).

Further, if the Final Order was temporary, M.S. again failed to file a timely motion to dismiss under Section 263.402 and has waived her right to object to the trial court's failure to dismiss the suit. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017). The trial court held a hearing on the Order of Termination on August 4, 2020, and the testimony reflected that the Department's attorney and the former caseworker agreed that M.S. executed an affidavit of voluntary relinquishment of parental rights to her children. The former caseworker, CASA volunteer, and the ad litem testified that termination of M.S.'s parental rights were in the best interest of the children. The trial court accepted M.S.'s affidavit and found that termination was in the children's best interest. We conclude that a trial on the merits commenced, for the Order of Termination, on August 4, 2020. *See In re Z.S.*, 2020 WL 2037202, at *4-5. M.S. filed her motion to dismiss on April 28, 2021, approximately one and a half months after the Order of Termination was filed on March 10. From this evidence, if the Final Order was temporary, M.S. did not file a timely motion to dismiss under Section 263.402 and waived her right to object to the trial court's failure to dismiss the suit. *See* Act of May 27, 2007, 80th Leg., R.S., ch. 866, § 3, sec. 263.402(b), 2007 TEX. SESS. LAW SERV. 1837, 1838 (amended 2017).

Because M.S. waived her right to object to the trial court's failure to dismiss the suit, we conclude that the trial court did not abuse its discretion by denying her motion to dismiss. Accordingly, we overrule her third issue.

## DISPOSITION

Having overruled M.S.'s first, second, and third issues, we ***affirm*** the judgment of the

trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 15, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 15, 2021**

**NO. 12-21-00045-CV**

**IN THE INTEREST OF C. D., J. D. AND T. D., CHILDREN**

Appeal from the 392nd District Court
of Henderson County, Texas (Tr.Ct.No. 2014B-0087)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*